IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01443-MSK-MEH

JON STEPHAN VAUPEL,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

**ORDER DENYING MOTION TO DISMISS, AND
DIRECTING THE CLERK OF COURT TO SEEK
*PRO BONO* COUNSEL FOR THE PLAINTIFF**

---

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) **(#20)**, to which the Plaintiff did not timely respond. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

For purposes of determining the instant motion, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Background

The Plaintiff, Jon Stephan Vaupel, asserts claims against the Defendant, United States of America, pursuant to the Federal Tort Claims Act. Mr. Vaupel appears *pro se*. Therefore, the Court liberally construes his filings in accordance with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). Even a *pro se* litigant must comply with all Court rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

Mr. Vaupel is a citizen of Australia and currently resides in New South Wales, Australia. His claims arise from a series of events occurring in Colorado and elsewhere in the United States dating back to 1995. All of his claims pertain to his unsuccessful attempts to become a permanent resident of the United States. The following is a summary of his factual allegations:[1]

Between 1995 and 2003, Mr. Vaupel entered the United States several times in accordance with the Visa Waiver Program.[2] In June 1997, he inadvertently was unable to comply with the Visa Waiver Program requirements when a flight he was scheduled to take from Japan to Australia was cancelled. He refers to this incident as "the overstay." He cured the overstay by remaining at the departure gate for 3 days, when he was next able to fly out of Japan. Subsequent to that incident, he was able to reenter the United States through the Visa Waiver Program seven additional times before 2003.

While in the United States, Mr. Vaupel met Stacy Schwab, a United States citizen. In 2001, the two of them relocated to Australia and married.[3] In 2002, Ms. Schwab became pregnant and returned to the United States to deliver the child. They planned to return to

---

[1] For purposes of simplicity, the Court recites such allegations as though they were factually true. However, many of these factual recitations are disputed by the United States.

[2] Under the Visa Waiver Program, nationals of certain specified countries can enter the United States for a period of up to 90 days for business or pleasure without a visa. 8 U.S.C. § 1187; 8 C.F.R. § 41.2(l)(1).

[3] For purposes of this opinion, the Court will continue to refer to Stacy Schwab as "Ms. Schwab," irrespective of her marital status and apparent changes in name.

Australia after the child was born. However, Ms. Schwab experienced a medical complication with the pregnancy and was admitted to a hospital in Texas.

A few days after he learned of Ms. Schwab's condition, Mr. Vaupel flew to the United States on January 31, 2003. At the airport in Los Angeles, he applied for admission to the United States under the Visa Waiver Program but he was denied admission after an electronic system "flagged" him as ineligible to enter under the Visa Waiver Program due to the June 2007 overstay incident. Immigration officer Michael Williams then granted him humanitarian parole into the United States with the status of "arriving alien." Mr. Williams did not advise Mr. Vaupel of his right to apply for a visa through a local consular officer, nor did he refer Mr. Vaupel to the District Director for the airport to obtain a waiver of the visa requirements.

Almost one month later, Ms. Schwab remained in the hospital. Mr. Vaupel met with Anne Estrada, the United States Citizenship and Immigration Services ("USCIS") District Director for Dallas, Texas, who extended Mr. Vaupel's humanitarian parole until March 7, 2003. The District Director advised Mr. Vaupel and his wife to submit I-130 and I-485 applications for lawful permanent resident status. They submitted these applications on March 7. Ms. Schwab delivered their baby on March 12 but remained in the hospital until April 2003.

Mr. Vaupel, Ms. Schwab, and their son remained in the United States. In October 2003, they moved to Denver, Colorado. On February 5, 2004, Mr. Vaupel was granted temporary lawful permanent resident status and was issued a work permit.

In April 2004, Ms. Schwab was convicted of domestic violence against Mr. Vaupel and their son. Approximately two months later, Mr. Vaupel learned that Ms. Schwab was engaging in an extra-marital affair with USCIS District Director Mario Ortiz. In June 2004, Mr. Vaupel

was arrested based upon false allegations of criminal conduct by Ms. Schwab. On June 25, 2004, Ms. Schwab withdrew her application sponsoring Mr. Vaupel's residency, on documents signed by Mr. Ortiz. Mr. Vaupel then filed an application for legal separation from Ms. Schwab and sought custody of their son. In July 2002, with regard to the criminal charges, Mr. Vaupel posted bond and was released.

In October 2004, Mr. Vaupel was arrested and detained by Immigration and Customs Enforcement ("ICE") officers in Aurora, Colorado. ICE officers served Mr. Vaupel with a "Determination of Inadmissibility" and an "Order of Expedited Removal", both premised upon Mr. Vaupel's status as an "arriving alien" on humanitarian parole. In November 2004, Mr. Vaupel completed an I-360 application under the Violence Against Women Act to self-sponsor his permanent residency on the basis that he was the spouse of an abusive United States citizen.

Also in November 2004, Mr. Vaupel was transferred into the custody of Jefferson County authorities due to ongoing criminal proceedings against him. At that juncture, the bond he posted in July 2004 was not revoked. ICE Officer Samson[4] then placed a detainer which prevented Mr. Vaupel from being released. At a hearing in Mr. Vaupel's criminal case, Mr. Sampson asked the state court judge to revoke Mr. Vaupel's bond, and threatened that if his bond was not revoked, Mr. Sampson would swiftly remove Mr. Vaupel from the United States. The criminal charges asserted against Mr. Vaupel were dismissed in February 2005, for lack of evidence and inconsistent statements made by Ms. Schwab.

Mr. Vaupel, back in ICE custody, commenced a habeas corpus action in February 2005

---

[4] He does not specify a first name, but this appears to be a reference to John Sampson, an ICE Deportation Officer.

to prevent his removal from the United States. A few months later, he was transferred to the custody of Adams County due to new criminal charges of attempted murder and solicitation of murder, based upon information obtained by the Federal Bureau of Investigation from Mr. Ortiz and others. Mr. Vaupel was tried and acquitted on these charges in March 2006.

Mr. Vaupel was then placed back in ICE custody. He was transferred to another detention facility in Fairplay, Colorado, in June 2006, but was moved back to the ICE facility in Aurora in November 2006.[5] In February 2007, Mr. Vaupel was removed to Australia.

Based upon the alleged facts, Mr. Vaupel asserts nine claims for relief against the United States based upon the conduct of Mr. Ortiz, other USCIS officers, ICE officers, and the FBI. The legal theories on which his claims are based include false arrest and imprisonment, abuse of process, malicious prosecution, negligence, outrageous conduct, and violation of the Freedom of Information Act. As to all claims, Mr. Vaupel seeks to recover damages for lost property, lost income, emotional distress, pain and suffering, and loss of enjoyment of life caused by his detention and deportation.

### III. Motion to Dismiss

The United States moves to dismiss most of Mr. Vaupel's claims, either for lack of subject matter jurisdiction or for failure to state a claim. Mr. Vaupel has not timely responded to the motion.[6]

---

[5] There is an apparent typographical error in the Amended Complaint. Mr. Vaupel alleges that he was transferred back to the Aurora facility during 2007, but that he was deported the following February 2007. Mr. Vaupel commenced this action prior to November 2007. Therefore, the Court treats this as an allegation that he was brought back to Aurora in 2006.

[6] Mr. Vaupel made three requests to extend the response deadline. His first motion **(#21)** sought 60 days (*i.e.*, until February 19, 2008) to respond to the United States' motion. It was denied **(#22)** for lack of certification under D.C.COLO.LCivR 7.1(A). Mr. Vaupel filed a second motion **(#23)** which

Arguably, the Court could deem the motion to be confessed. However, if the Court did so, it would not be entirely clear what claims to dismiss because the United States' motion does not address all of the claims or legal theories on which Mr. Vaupel's claims are based.[7] In addition, the Court must liberally construe Mr. Vaupel's Amended Complaint. In doing so, the Court has identified other potential legal theories which might align with the facts pled.

Finally, in addition to representing himself, Mr. Vaupel is compelled, by the very circumstances of which he complains, to do so from outside the United States. He and the judicial process will be best assisted if he is represented by counsel.

Under these circumstances, the Court concludes that, rather than dismiss any claims, the better course of action is to request the Clerk of Court to canvass interested counsel as to their willingness to represent Mr. Vaupel,[8] and to allow Mr. Vaupel to amend his complaint.

Mr. Vaupel is advised that this is not "appointment" of counsel in the true sense, *i.e.*, the Court cannot force an attorney to undertake representation. Rather, the most this Court can do is attempt to find an attorney to volunteer his or her services on Mr. Vaupel's behalf. Until and

---

contained such certification and sought until March 7, 2008 to file a response. The Court denied **(#24)** that motion for failure to submit a proposed order. Mr. Vaupel then filed a motion **(#25)** for reconsideration and asked for 60 days from February 4, 2008 (*i.e.*, until April 4, 2008) to file a response. The Court granted **(#26)** the motion for reconsideration, stating that the Court would reconsider the motion for an extension of time upon its refiling. Mr. Vaupel has not filed another motion for extension of time, nor did he file a response to the United States' motion by April 4, 2008.

[7] For example, the United States has argued that it is entitled to sovereign immunity as to some of Mr. Vaupel's claims but not others.

[8] Mr. Vaupel has been granted leave to proceed in this action *in forma pauperis.* Previously, he moved for the appointment of counsel, but his motion was denied as premature. He has not renewed his request for appointed counsel, but the Court reconsiders it *sua sponte.* In considering whether to appoint counsel in a civil case, the Court is guided by the factors set forth in *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). These include: "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Id.* (citations and quotations omitted).

unless an attorney volunteers to appear as counsel for Mr. Vaupel, he will continue to represent himself in this case.

**IT IS THEREFORE ORDERED** that:

(1) The Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) **(#20)** is **DENIED**, without prejudice.

(2) The Clerk of Court shall canvass the *pro bono* panel to determine whether any qualified attorney is willing to accept appointment subject to the terms outlined above. If an attorney agrees to undertake volunteer representation or, if upon a canvassing the entire eligible panel, no attorney has expressed a willingness to accept appointment, the Clerk of Court shall promptly file and serve on all parties a notice to that effect. Unless and until a volunteer attorney is secured, Mr. Vaupel remains personally obligated to comply with all procedures and deadlines established in this case.

(3) If volunteer counsel enters an appearance on behalf of Mr. Vaupel, then said counsel shall file a Second Amended Complaint within **30 days** following the entry of appearance.

(4) If no attorney enters an appearance on behalf of Mr. Vaupel by September 30, 2008, then Mr. Vaupel shall have until October 30, 2008 to file his Second Amended Complaint *pro se*. The failure to do so will result in dismissal of this action for failure to prosecute.

Dated this 12th day of June, 2008

**BY THE COURT:**

_____
Marcia S. Krieger
United States District Judge