IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01443-PAB-KLM

JON STEPHAN VAUPEL,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Motion for Leave to File Amended Complaint and to Add Additional Defendants** [Docket No. 78; Filed December 10, 2010] ("Motion to Amend").   Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation.[1]  The Court has reviewed the Motion to Amend, Defendant's Response in opposition to the Motion [Docket No. 83], Plaintiff's Reply [Docket No. 84], Defendant's Surreply [Docket No. 88], the entire file, relevant legal authority, and is fully advised in the premises.  For the reasons stated below, the Court RECOMMENDS that the Motion to Amend be **DENIED**.

_____

        [1]  A magistrate judge may issue orders on nondispositive motions only.  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988).  Whether motions to amend are dispositive is an unsettled issue.  *Chavez v. Hatterman*, No. 06-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan 13, 2009) (unpublished decision) (citing cases).  When an order denying a motion to amend removes a defense or claim from the case it may be dispositive.  *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002).  For the purposes of resolving the present Motion, the Court will assume that the issues involved are dispositive and require a recommendation.

## I.  Statement of the Case

This case involves a dispute relating to Plaintiff's denial of citizenship, detention and deportation.  Pursuant to the Motion to Amend, Plaintiff seeks to add new claims against the United States and to add Mario R. Ortiz and John N. Sampson as Defendants.[2]

### A.    Factual Background

Although Plaintiff is an Australian citizen who currently resides in Australia, his claims arise from events that occurred in Colorado and elsewhere in the United States. Plaintiff's factual allegations, many of which are disputed by Defendants, are taken from his proposed Amended Complaint [Docket No. 78-1] and summarized below.

Between 1995 and 2003, Plaintiff entered the United States several times pursuant to the Visa Waiver Program.[3]  *Proposed Amended Complaint* [#78-1] at 3.  In 2002, Plaintiff married Stacy Schwab ("Schwab"), a United States citizen, in Australia.  *Id.*  In January 2003, Schwab gave birth to the couple's son in Dallas, Texas.  *Id.* at 4.  Plaintiff flew to the United States shortly before the couple's son was born, but due to an "overstay" incident that occurred in 1997,[4] immigration officer Michael Williams identified Plaintiff as ineligible to enter the United States pursuant to the Visa Waiver Program.  *Id.*  Instead, Officer

---

[2] Although there is only one named Defendant at present, the Response to the Motion to Amend raises arguments regarding the claims asserted against the current and proposed Defendants.  Therefore, the Court refers to Defendants in the plural throughout this Recommendation.

[3]  The Visa Waiver Program allows nationals of certain specified countries to enter the United States for up to ninety days for business or pleasure trips without a visa.  8 U.S.C. § 1187.

[4]  According to Plaintiff, in June 1997, Plaintiff's flight from Japan to Australia was cancelled and he therefore "overstayed" under the Visa Waiver Program.  After curing the incident by remaining at the departure gate for three days, Plaintiff claims that he was able to re-enter the United States through the Visa Waiver Program several times before the incident involving Officer Williams.  *Proposed Amended Complaint* [#78-1] at 3.

Williams granted Plaintiff "humanitarian parole" to enter the country as an "arriving alien." *Id.* In February 2003, Plaintiff met with Anne Estrada, who at the time was the United States Citizen and Immigration Services ("USCIS") District Director for Dallas, Texas. *Id.* She extended Plaintiff's humanitarian parole until March 7, 2003. *Id.* She also advised Plaintiff and Schwab to submit I-130 and I-485 applications for Plaintiff to obtain lawful permanent resident status, which they submitted. *Id.*

In February 2004, after Plaintiff and Schwab moved to Denver, Plaintiff was granted conditional permanent residency status. *Id.* In April 2004, Schwab was arrested by the Jefferson County Sheriff and was charged with domestic violence and child abuse against Plaintiff and their son. *Id.* at 5. In June 2004, Plaintiff was arrested based on what he claims were false allegations of criminal conduct asserted by Schwab. *Id.* at 6. On June 25, 2004, Schwab withdrew her application supporting Plaintiff's permanent residency. *Id.* On June 28, 2004, Mario R. Ortiz, Director of USCIS in Denver, Colorado, denied Plaintiff's I-130 application form. *Id.* Soon thereafter, Ortiz also denied Plaintiff's I-485 application form. *Id.* After the denial of his applications by Ortiz, Plaintiff alleges that he learned that Schwab was engaged in an extra-marital affair with Ortiz. *Id.* Plaintiff filed for legal separation from Schwab in September 2004 and was awarded sole temporary custody of their son. *Id.* The couple ultimately divorced.

Because Plaintiff was denied permanent residency in the United States, Immigration and Customs Enforcement ("ICE") officers arrested and detained Plaintiff in Aurora, Colorado on October 12, 2004. *Id.* ICE officers served Plaintiff with an "Order of Expedited Removal" on the grounds that Plaintiff did not possess a valid visa. *Id.* at 7. While in detention, Plaintiff hired counsel to complete an I-360 application under the Violence

Against Women Act to self-sponsor his permanent residency on the basis that his spouse was abusive. *Id.* This application was denied in February 2007. *Id.*

In November 2004, Plaintiff was temporarily transferred into the custody of Jefferson County authorities due to ongoing state court criminal proceedings against him based on Schwab's allegedly erroneous criminal allegations. *Id.* John N. Sampson, an ICE officer with the Department of Homeland Security ("DHS"), filed a federal detainer which prevented Plaintiff from being released from custody. *Id.* Sampson appeared at a state court hearing in Plaintiff's criminal case and allegedly asked the state court judge to revoke Plaintiff's bond because of the detainer. According to Plaintiff, Sampson also "threatened" that if Plaintiff's bond was not revoked, Sampson would promptly remove Plaintiff from the United States. *Id.* at 8. The state court judge agreed to revoke the bond. *Id.* In February 2005, the state criminal charges against Plaintiff were dismissed. *Id.*

Thereafter, Plaintiff was detained in the custody of ICE without bond. *Id.* He began a federal habeas corpus action in February 2005 to prevent his removal from the United States. *Id.* A few months later, he was transferred to Adams County where he faced new criminal charges of attempted murder and solicitation of murder, based on information furnished to the Federal Bureau of Investigation by an unidentified informant. *Id.* Plaintiff was tried and acquitted of those charges in March 2006. *Id.* Plaintiff was subsequently returned to ICE custody without bond. After the district court's denial of his habeas corpus petition, Plaintiff was deported to Australia in February 2007. *Id.* at 8-9. After Plaintiff's deportation, the Tenth Circuit rejected Plaintiff's appeal of the denial of his habeas corpus petition. *Id.* at 9. According to Plaintiff, Schwab and Ortiz were married in Texas in June 2007. *Id.*

4

Pursuant to the Amended Complaint, Plaintiff alleges that he was unlawfully incarcerated in the United States from October 12, 2004 until his deportation on February 25, 2007. *Id.* He contends that Ortiz had no authority to deny his residency applications and rescind what Plaintiff contends was his lawful permanent residency. *Id.* He also contends that ICE had no authority to detain him, or to have him detained under state custody, from 2004 to 2007. *Id.* According to Plaintiff, these allegedly wrongful actions caused Plaintiff to "suffer imprisonment, false allegations and criminal prosecution, loss of enjoyment of life, pecuniary loss, full deprivation of parental rights and deportation." *Id.* at 10. Finally, he contends that "[b]ecause [he] was never lawfully divested of his lawful permanent residency, he remains a lawful permanent resident [of the United States] today, and the removal order against him is invalid and must be set aside." *Id.*

## B.    Procedural History

On October 10, 2006, Plaintiff filed a claim with DHS pursuant to the exhaustion requirement of the Federal Tort Claims Act ("FTCA"). *Id.* at 9; *see also Complaint* [#3] at 55-74.[5]   Plaintiff asserted the following claims:   (1) abuse of process and malicious prosecution by ICE officers, including Ortiz; (2) negligence of officer Michael Williams; (3) negligence of USCIS District Director Anne Estrada; and (4) abuse of process in delaying his request for documents under the Freedom of Information Act. *Complaint* [#3] at 55-72. On December 27, 2006, Plaintiff was notified that his claim was administratively denied. *Id.* at 73.

---

[5] As a preliminary matter, Plaintiff's grievance could only exhaust claims related to conduct that occurred within two years of October 10, 2006. Moreover, as Plaintiff did not file a grievance after October 10, 2006, any conduct that occurred after that time cannot be the subject of any of Plaintiff's present FTCA claims. *See* 28 U.S.C. §§ 2401(b) & 2675(a).

Exactly six months later, Plaintiff, proceeding *pro se*, filed this action.[6]  His original Complaint included the following claims for relief against the United States based upon the conduct of Ortiz, other USCIS officers, ICE officers, and the FBI: (1) false arrest and imprisonment; (2) abuse of process; (3) malicious prosecution; (4) negligence; (5) outrageous conduct; and (6) violation of the Freedom of Information Act.  *See Order* [#49] at 5.  At the time of its initial filing, Plaintiff's case was assigned to District Judge Marcia S. Krieger.  Although appearing to recognize that Plaintiff's *pro se* Complaint was ineffectual, Judge Krieger nevertheless denied the United States' Motion to Dismiss without prejudice. *Id.* at 7.  Judge Krieger also directed that Plaintiff be placed on the volunteer counsel list to determine whether a qualified attorney would be willing to accept appointment to represent Plaintiff, and ordered that if no attorney appeared on behalf of Plaintiff by September 30, 2008, Plaintiff would be required to file an amended complaint by October 30, 2008 or the case would be dismissed.  *Id.*

After the Court's Order, Plaintiff filed a motion for an extension of thirty days to file an amended complaint, which the Court denied [Docket Nos. 56 & 60].  Thereafter, the case was reassigned to District Judge Philip A. Brimmer.  Because counsel did not volunteer to represent Plaintiff and Plaintiff had not timely filed an amended complaint, the Court issued an Order to Show Cause as to why this case should not be dismissed as per Judge Krieger's prior Order [Docket No. 61].  Plaintiff responded that he intended to amend his complaint to include claims under *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and also requested leniency based upon his *pro se*

---

[6] Although Plaintiff's Motion to Amend states that Plaintiff "filed suit *pro se* on July 10, 2007," see *Motion to Amend* [#78] at 1, Plaintiff actually filed this lawsuit on June 27, 2007 [Docket No. 1].

status [Docket No. 62].  Over the United States' objection, the Court recommended that the case be administratively closed for six months subject to being reopened for good cause [Docket No. 63].  The Court also recommended that Plaintiff's case be kept on the list of individuals in need of volunteer counsel.  *Id.*

Prior to resolution of the Recommendation, an attorney agreed to represent Plaintiff [Docket No. 68].  Because Plaintiff had obtained counsel, Judge Brimmer denied the Recommendation and directed that the case proceed [Docket No. 69].  Pursuant to that direction, the Court ordered Plaintiff to file a motion for leave to amend and a proposed amended complaint by November 5, 2010 [Docket No. 71].  Plaintiff, through counsel, moved for an extension of that deadline by a month, and the Court granted Plaintiff's motion [Docket No. 74].  Plaintiff then filed a proposed amended complaint which the Court struck because it was not accompanied by a motion for leave to amend [Docket Nos. 76 & 77].  Finally, on December 10, 2010, Plaintiff filed the present Motion to Amend with an accompanying proposed Amended Complaint [Docket Nos. 78 & 78-1].

## II.  Analysis

The Court should grant leave to amend a complaint "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff's proposed Amended Complaint seeks to include the following claims:  (1) abuse of process; (2) breach of fiduciary duty; (3) fraud; (4) false imprisonment; (5)

7

negligence; (6) intentional infliction of emotional distress; (7) interference with contract; and (8) civil conspiracy. *Proposed Amended Complaint* [#78-1] at 10-12. Plaintiff's proposed Amended Complaint also seeks to add Ortiz and Sampson as Defendants, and appears to assert each claim against all Defendants. *Id.* Defendants argue that the Motion to Amend should be denied because it is not timely, it unduly prejudices Defendants, and each proposed claim or amendment is futile. *Response* [#83] at 9-25. The Court addresses each objection below.

### A.    Undue Delay

The Court may deny a motion to amend based on undue delay. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). "The important inquiry is not simply whether Plaintiff has delayed, but whether such delay is undue." *Id.* at 1206. The Tenth Circuit "focuses primarily on the reason for the delay." *Id.* A motion to amend is untimely if, among other reasons, the moving party has made the complaint a "moving target," is trying to "salvage a lost case by untimely suggesting new theories of recovery," is trying to present more theories to avoid dismissal, or is knowingly waiting until the eve of trial to assert new claims. *Id.* at 1206 (citations omitted). Other common reasons for finding undue delay include lack of adequate explanation for the delay or when a moving party knows or should have known of the facts in the proposed amendment but did not include them in the original complaint or any prior attempts to amend. *Id.* (citations omitted).

When a Plaintiff provides an adequate explanation for the delay, leave to amend should not be denied on this basis. *Id.* In this case, Plaintiff states that he is now "alleging specific statutory and constitutional errors not previously identified in his original complaint due to his lack of legal training and understanding of the relevant laws." *Motion to Amend*

[#78] at 3.  Plaintiff also explains that he "did not know and could not have known the full spectrum of immigration laws, federal tort claim laws and constitutional laws that bear upon his claims.  His initial pleadings are deficient because of this fact."  *Id.* at 5.

Defendants cite *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006), *Woolsey v. Marion Labs, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991), and *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) to argue that untimeliness alone can justify a denial of leave to amend.  These cases are distinguishable because of the peculiar facts at issue here.  Simply, the procedural history of this case, combined with its factual complexities, counsel against concluding that Plaintiff should be foreclosed from proceeding because of the delay.  Defendants also cite *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981) to argue that the retention of a new attorney is not an excuse for a late filing of an amended complaint.  While the Court is mindful of the delay that has occurred here, delay that was related, in part, to Plaintiff's lack of counsel, the Court is not persuaded by the holding in *Amarillo* in this instance.  Further, it was not unreasonable for Plaintiff to delay attempting to file an amended complaint *pro se* while my Recommendation to administratively close the matter was pending.

Given Plaintiff's original *pro se* status, the inherent difficulties of finding a lawyer in the United States while living in Australia and the procedural history of this case, including the length of time that the Recommendation to administratively close the matter remained pending, the Court finds that Plaintiff's Motion to Amend, while delayed, is not unduly delayed.

**B.    Undue Prejudice**

9

"Prejudice to the nonmoving party is the most important factor in considering whether amendment should be permitted." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* (citations omitted).

In this case, neither Defendant United States nor proposed Defendants Ortiz and Sampson adequately show that they will be unfairly impacted in terms of preparing their defense to the amendments. They acknowledge that the proposed Amended Complaint "is not that different from the original complaint." *Response* [#83] at 11. Moreover, the parties have not initiated discovery. As is addressed below, the Court is not convinced that Defendants will be prejudiced in terms of preparing their defense to the amendments for any of the reasons Defendants provide.

Specifically, Defendants contend that (1) they are entitled to rely on Judge Krieger's previous Order, wherein she determined that the case should be dismissed if not amended by October 30, 2008; (2) Sampson is no longer employed by ICE; and (3) Ortiz now lives in Texas. *Id.* at 12-13. Although the Court is mindful of Judge Krieger's previous decision, the case has taken a different path since its transfer to Judge Brimmer. Moreover, Defendants fail to clearly establish how their current employment or residence status would *unduly* prejudice them if amendment were permitted. Accordingly, the Court finds that Defendants have failed to persuade the Court that they would suffer undue prejudice by amendment.

10

## C.    Futility of Amendment

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor Servs, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); *see also Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991) ("Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss . . ., a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." (citations omitted)).  In this case, there are two grounds upon which Plaintiff's proposed Amended Complaint could be subject to dismissal:  (1) lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and (2) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Regarding Plaintiff's claims, the Court notes that "[w]hen a federal law enforcement officer commits [a tort], the victim has two avenues of redress:  (1) he may bring a *Bivens* claim against the individual officer based on [certain alleged] constitutional violation[s], or (2) he may bring a common law tort action against the United States pursuant to the FTCA. These are separate and distinct causes of action arising out of the same transaction." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 858 (10th Cir. 2005) (citation omitted).  As a preliminary matter, the parties disagree whether the proposed Amended Complaint contains any *Bivens* claims against the individual Defendants.  The Court agrees with Defendants that Plaintiff does not raise any valid *Bivens* claims in the proposed Amended Complaint.  Therefore, the United States is the only proper Defendant

11

in this case.   Moreover, the Court finds that each of Plaintiff's FTCA claims against Defendant United States would be subject to dismissal and is therefore futile.   My decision is explained below.

### 1.    Plaintiff's Claims Against Ortiz and Sampson

Plaintiff contends that he has sufficiently alleged that Ortiz and Sampson violated his constitutional rights.  *Reply* [#84] at 1-5.   Pursuant to *Bivens*, a plaintiff may have a "private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1947 (2009) (citation omitted).   However, "to state a claim based on a violation of a clearly established right, [Plaintiff] must plead sufficient factual matter to show that" Defendants violated a specific constitutional provision.  *Id.* at 1948-49.   In addition, a claim must go beyond providing a "formulaic recitation of the elements" to satisfy a party's pleading burden.  *Id.* at 1949 (citation omitted).   Finally, the claim and the supporting allegations must provide sufficient facts to explain how a particular defendant personally participated in the alleged harm.  *Id.* at 1952.   To this end, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

From a review of the face of the proposed Amended Complaint, the Court finds that Plaintiff has not sufficiently placed <u>any</u> constitutional claims at issue against Ortiz and Sampson.   First, there are no constitutional claims contained in the section titled "Claims for Relief."  *See Proposed Amended Complaint* [#78-1] at 10-12.   This section purports to contain <u>every</u> claim asserted by Plaintiff in this lawsuit.   Second, while the proposed

12

Amended Complaint cites to *Bivens* as a basis for the Court's *jurisdiction*, see *id.* at 2-3, in the absence of any constitutional claims listed in the "Claims for Relief" section, such a reference has little value.

Third, even were the Court to look beyond the specific claims asserted by Plaintiff in the "Claims for Relief" section (which, in an attorney-authored pleading the Court should not be required to do), I find that the proposed Amended Complaint does not contain sufficient detail to adequately raise *Bivens* claims.  As a preliminary matter, the court is hard-pressed to locate a constitutional reference in the proposed Amended Complaint. Nevertheless, having faithfully exercised my duty to review the proposed Amended Complaint in its entirety, the Court finds two, vague references.  Specifically, having considered all 104 total numbered paragraphs, only paragraphs 21 and 24 of the proposed Amended Complaint state that "rescission of [lawful permanent] residency required due process of law" and that once "[Plaintiff's] protected interest in his residency vested . . ., it was unlawful to divest him of his residency without due process of the law."  *Proposed Amended Complaint* [#78-1] at 5 ("Facts" section).  The above-quoted language is the full extent of any mention of an alleged constitutional violation and does not rise above "an unadorned, the defendant-unlawfully-harmed me accusation" rejected as inadequate by the Court in *Ashcroft*.  *See Ashcroft*, 129 S. Ct at 1949 (citation omitted).

Notably, the proposed Amended Complaint does not state that any particular Defendant violated Plaintiff's due process rights, or articulate the specific conduct that could be said to have constituted a due process violation.  In addition, the proposed Amended Complaint does not explain what process Plaintiff was entitled to but did not receive.  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001), *overruled on other*

13

grounds by *Pignanelli v. Pueblo Sch. Dist.*, 540 F.3d 1213 (10th Cir. 2008).   More

importantly, the vague references to an alleged due process violation do not attribute any

specific misconduct to  Ortiz or Sampson.  In fact, the due process references occur prior

to any mention of Ortiz's and Sampson's alleged conduct  This pleading deficiency is

significant because, as noted above, facts which speak to a party's personal participation

are essential to stating a *Bivens* claim against an individual.  *See Steele v. BOP*, 355 F.3d

1204, 1214 (10th Cir. 2003) (recognizing that "direct personal participation [is] required to

establish *Bivens* liability"), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199

(2007).[7]

    Viewing the proposed Amended Complaint as a whole, not only does Plaintiff fail to

list any *Bivens* claims, but if any could be said to exist, they have not even been pled with

the "formulaic recitation of the elements" rejected by the Court in *Ashcroft*.  *See Ashcroft*,

129 S. Ct. at 1951 (citation omitted); *see also id.* at 1954 ("Rule 8 does not empower [a

plaintiff] to plead the bare elements of his cause of action, affix the label 'general

allegation,' and expect his complaint to survive a motion to dismiss").  Although pleadings

filed by a *pro se* party may be entitled to liberal pleading interpretation, the Motion to

Amend and proposed Amended Complaint at issue here are authored by an attorney and,

thus, do not enjoy any liberal treatment.  *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th

---

[7] Plaintiff attempts to identify *Bivens* claims and provide factual support for such claims in his Reply [Docket No. 84].  As in resolving a motion to dismiss, the Court is limited to a review of the proposed Amended Complaint to determine whether certain claims are adequately pled.  *Blackmon v. U.S.D. 259 School Dist.*, ___ F. Supp. 2d ___, 2011 WL 573957, at *6 & n.47 (D. Kan. Feb. 15, 2011) (publication pending) ("To the extent Plaintiff tried to assert additional or different claims in her response to Defendant's motion to dismiss, these claims are not allowed.").  Even if the Court considered Plaintiff's explanation in his Reply, I note that only Ortiz's conduct is specifically mentioned in relation to an alleged due process violation.  Further, I also note that Plaintiff does not explain in his Reply what process he was entitled to receive but did not, which is an essential allegation for any procedural due process claim.  *See Bartell.*, 263 F.3d at 1149.

Cir. 2007); *see also Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (recognizing that where pleadings are drafted by a licensed attorney, court "cannot afford [party] the advantage of liberal construction" (citation omitted)).   Furthermore, even if a pleading is authored by a *pro se* party, the Court is prohibited from manufacturing claims that could be said to exist from a factual recitation, but are not specifically pled.   *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).   This legal principle is significant here, where the Court is essentially being asked to supply *Bivens* claims in an attorney-authored pleading which do not appear to exist on the face of the proposed Amended Complaint.[8] *See generally* Fed. R. Civ. P. 8 (requiring, at a minimum, that the pleadings provide a defendant with sufficient notice of the claims at issue that would entitle a plaintiff to relief).

The Court finds that Plaintiff's proposed Amended Complaint only asserts FTCA claims, and not *Bivens* claims.   In the context of the FTCA, any claims asserted against Ortiz and  Sampson would be futile, as the United States is the only proper Defendant with respect to those claims.   *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (affirming district court's dismissal of individually named defendants on the grounds that they were not proper parties in an FTCA suit).   Accordingly, as proposed Defendants Ortiz and Sampson may be properly named only in conjunction with *Bivens* claims, and such claims have not been properly pled, granting leave to amend the Complaint to add them as parties would be futile.

### 2.    Plaintiff's Claims Against the United States

---

[8] Although Plaintiff secured the services of his counsel through the Court's voluntary *pro bono* list, he chose to accept these services and, as such, is bound by counsel's pleading decisions in this case. *See generally Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962) .

Because futility is based on whether a claim could survive a motion to dismiss, the applicable standards for resolving a motion to dismiss are relevant here.  The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F. 3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Servs., Inc. v. Qwest Corp.*, 493

F.3d 1225, 1235 (10th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Aschroft*, 129 S. Ct. at 1949.  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*  (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.*  (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 129 S. Ct. at 1949 (citation omitted).

As noted above, Plaintiff's only proposed claims are asserted pursuant to the FTCA.  Specifically, Plaintiff asserts claims based upon (1) abuse of process; (2) breach of fiduciary duty; (3) fraud; (4) false imprisonment; (5) negligence; (6) intentional infliction of

emotional distress ("IIED"); (7) interference with contract; and (8) civil conspiracy.[9] *Proposed Amended Complaint* [#78-1] at 10-12.  "Through the FTCA, the United States waive[s] its immunity to suits 'for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." *Dahl v. United States*, 319 F.3d 1226, 1228 (10th Cir. 2003) (quoting 28 U.S.C. § 1346(b)(1)).  However, the waiver of immunity is not absolute and the ability to pursue certain claims depends on proper exhaustion and the conduct involved.  *See generally Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (citing 28 U.S.C. § 2675(a)).  For the reasons set forth below, the Court finds that each of Plaintiff's FTCA claims would be futile.

### i.      Plaintiff's Intentional Tort Claims[10]

28 U.S.C. § 2680(h) waives the United States' sovereign immunity only in limited circumstances.  Generally, "[a]ny claim arising out of . . . false imprisonment . . . , abuse of process, misrepresentation [(fraud)] . . . , or interference with contract rights" does not trigger a waiver of sovereign immunity.  *Id.*  However, the FTCA does waive the United States' sovereign immunity for false imprisonment or abuse of process claims that result from an investigative or law enforcement officer's act or omission, which applies to "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  *Id.*  "The applicability of the

---

[9] In determining whether a plaintiff has stated any viable tort claims pursuant to the FTCA, the Court applies the law of the place where the alleged wrongful conduct occurred. *See* 28 U.S.C. § 2674; *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993).  Here, in the absence of any argument otherwise, the Court applies Colorado law.

[10] Plaintiff's intentional tort claims are (1) fraud, (2) interference with contract, (3) abuse of process, and (4) false imprisonment.

intentional tort exception is a question of subject matter jurisdiction . . . ." *Dry v. United States*, 235 F.3d 1249, 1257 (10th Cir. 2000). Accordingly, unless sovereign immunity has been waived, the Court generally lacks subject matter jurisdiction over claims sounding in intentional tort.

In this case, Plaintiff's fraud claim is futile because the Tenth Circuit has expressly recognized that "claims of fraud against the federal government are barred by § 2680(h) of the FTCA, and, like other exceptions to the FTCA, § 2680(h) limits the jurisdiction of the federal courts." *Wexler v. Merit Sys. Protection Bd.*, 986 F.2d 1432 (table) (10th Cir. Feb. 17, 1993) (unpublished decision); *see also Estate of Trentadue*, 397 F.3d at 854. Similarly, interference with contract claims are also barred by § 2680(h). *Cooper v. Am. Auto. Ins. Co.*, 978 F.2d 602, 613 (10th Cir. 1992). Accordingly, because the FTCA does not waive claims of sovereign immunity for fraud and interference with contract claims, those claims are futile and Plaintiff's Motion to Amend should be denied as to them.[11]

Plaintiff's abuse of process and false imprisonment claims are also futile. As noted above, while sovereign immunity is waived for certain types of false imprisonment and abuse of process claims, the waiver is limited to when the conduct at issue was committed by an investigative or enforcement officer, i.e, an officer with the power to execute searches, seize evidence, or make arrests for violations of federal law. 28 U.S.C. §

---

[11] Moreover, Plaintiff fails to provide sufficient factual support for either claim. For example, pursuant to his fraud claim (which is subject to heightened pleading requirements pursuant to Fed. R. Civ. P. 9), Plaintiff must show that a misrepresentation was made that Plaintiff relied upon. *See Platt v. Aspenwood Condominium Ass'n*, 214 P.3d 1060, 1067 (Colo. Ct. App. 2009). Plaintiff provides no clear factual support for either allegation. In addition, pursuant to his interference with contract claim, Plaintiff must show that a valid contract existed between himself and a third party that Defendants induced the third party to breach. *Colo. Nat'l Bank v. Denver*, 846 P.2d 159, 170 (Colo. 1993). Plaintiff provides no clear factual support for either allegation.

2680(h).  Lists of which immigration officers have the power to make arrests, execute searches, and seize evidence can be found in 8 C.F.R. § 287.5(c) and (d).  The regulation provides that only those officers "who have successfully completed basic immigration law enforcement training":  "deportation officers," "adjudication officers" and "supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph" are officers whose conduct is subject to suit pursuant to the FTCA.  8 C.F.R. § 287.5(c)(1)(iii), (v), (vii) & (d)(1), (3), (5), (7).  Thus, whether Plaintiff's abuse of process and false imprisonment claims are barred by the United States' sovereign immunity depends upon whether Ortiz and Sampson are investigative officers as defined by § 2680(h).

"Unlike the strict limitations under 12(b)(6) against considering matters outside the complaint, a 12(b)(1) motion is considered a 'speaking motion' and can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." *Zinke v. Slater*, 34 Fed. Appx. 667, 672 n.5 (10th Cir. May 3, 2002) (unpublished decision) (citation omitted).  Because sovereign immunity is a jurisdictional issue, the Court may consider extraneous evidence in deciding whether Sampson and Ortiz are "investigative officers."  According to his affidavit, Ortiz was a supervisor at USCIS who did not have the power to make arrests or execute searches.  *Ortiz Affidavit* [#83-4], at 1-2.  Ortiz further asserts that none of the employees Ortiz supervised were required to take the Law Enforcement Module of the basic law enforcement training referred to in 8 C.F.R. § 287.5 (c) and (d) nor did they have the power to make arrests or execute searches.  *Id.* at 2.

In contrast, Plaintiff argues that "Ortiz, ICE and DHS officers are all federal investigative or law enforcement officers."  *Reply* [#84] at 8 (citing *Caban v. United States*,

728 F.2d 68, 72 (2d Cir. 1984); *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005)).[12]   *Caban* relies on 8 U.S.C. § 1357, which discusses the powers of immigration officers and employees "*authorized under regulations*" (emphasis added).   The implementing regulations relevant to that statute are 8 C.F.R. § 287.5 (c) and (d), which as discussed above, do not support a conclusion that Ortiz is an investigative or law enforcement officer.   Therefore the Court finds that Ortiz was not an "investigative or law enforcement officer" as defined by  § 2680(h).   As such, the Court has no jurisdiction to consider any claim for false imprisonment or abuse of process based upon Ortiz's conduct. Accordingly, the Court finds that Plaintiff's abuse of process and false imprisonment claims as they relate to Ortiz's conduct are futile and Plaintiff's Motion to Amend should be denied as it relates to those claims.

Unlike Ortiz, Defendants do not argue that Sampson was not an investigative or law enforcement officer within the meaning of § 2680(h).   In fact, Sampson alleges that he was a deportation officer who had the power to arrest.   *Sampson Affidavit* [#83-6] at 1-3. Accordingly, the Court appears to provisionally have jurisdiction over these claims as they relate to Sampson's conduct.   However, after reviewing the claims on their merits below, the Court finds that both of these claims are futile as to Sampson's conduct because they fail to establish all of the required elements and would be subject to dismissal under Rule 12(b)(6).[13]

---

[12]  *Welch* is inapposite as the court merely makes a general statement that the Fourth Circuit has found INS agents to be investigative officers within the meaning of § 2680(h).   *See Welch*, 409 F.3d at 651.

[13]  To the extent that Plaintiff's proposed Amended Complaint implicates unnamed Defendants who may be investigative or law enforcement officers, Plaintiff has not sufficiently pled which officer's conduct may have contributed to his claims and whether such conduct could be said to waive the United

Plaintiff's abuse of process claim is futile on the ground that it fails to allege all of the necessary elements.  "A claim for abuse of process requires a plaintiff to allege and prove the following elements:  (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, that is, use of a legal proceeding in an improper manner; and (3) resulting damage."  *Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. Ct. App. 2006).

Plaintiff's abuse of process claim is that Defendants intentionally wrongfully arrested, charged, prosecuted, and deported Plaintiff for the purpose of injuring and harassing him. *See Proposed Amended Complaint* [#78-1] at 10.  In support of this claim, Plaintiff alleges that Sampson (1) placed a "no bond hold" on Plaintiff, (2) appeared via telephone at Plaintiff's state court criminal hearing, (3) demanded that Plaintiff's bond be revoked, and (4) "threatened" the judge that ICE would ship Plaintiff back to Australia if the bond was not revoked. *Id.* at 8.  Plaintiff also asserts that the judge revoked Plaintiff's bond in response to Sampson's "threat."  *Id.*  However, Plaintiff fails to allege any facts which show that Sampson had an ulterior purpose for his actions.[14]  *Id.*

"The essence of the tort of abuse of process is the use of a legal proceeding

_____

States' sovereign immunity.  Because this is a jurisdictional prerequisite to suit, Plaintiff bears the burden of providing *prima facie* proof that sovereign immunity is waived with respect to his claims in his proposed Amendment Complaint.  *See, e.g., Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).  He has not done so here.  Moreover, the proposed Amended Complaint does not appear to implicate the conduct of any person other than the named Defendants in relation to the claims at issue.

[14]  Although Plaintiff could arguably show that Ortiz had an ulterior purpose because he was allegedly engaged in an extra-marital affair with Plaintiff's wife during the events at issue here, as discussed above, Ortiz is not an investigative or law enforcement officer and his conduct is not an appropriate basis for an abuse of process claim.  Plaintiff fails to establish any connection between Ortiz and Sampson which could tend to show that Sampson had an ulterior purpose.  Moreover, Plaintiff fails to allege that any other unnamed Defendant had an ulterior purpose or motive nor does Plaintiff mention the conduct of any other person with respect to this claim.

primarily to accomplish a purpose that the proceeding was not designed to achieve. Establishment of a *prima facie* case requires not only proof of an ulterior motive but proof of willful actions by the defendant in the use of process which are not proper in the regular conduct of a proceeding." *Walker*, 148 P.3d at 394.   Because Plaintiff failed to plead that Sampson had an ulterior motive or that he did anything improper in his communication with the state court trial judge, both of which are required to establish a *prima facie* case, Plaintiff fails to state an abuse of process claim upon which relief could be granted. *See Ashcroft*, 129 S. Ct. at 1949 ( "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").   Accordingly, the Court finds that Plaintiff's abuse of process claim as it relates to Sampson's or any other officer's conduct is futile and Plaintiff's Motion to Amend should be denied as it relates to this claim.

Plaintiff's false imprisonment claim is also futile as it relates to Sampson's conduct because it fails to state a claim upon which relief can be granted.   "False imprisonment is an unlawful restraint upon a person's freedom of locomotion, or the right to come and go when or where one may choose." *Blackman for Blackman v. Rifkin*, 759 P.2d 54, 58 (Colo. Ct. App. 1988) (citation omitted).   Thus "to confine one intentionally without lawful privilege and against one's consent within a limited area for any appreciable time, however short, constitutes the tort of false imprisonment." *Id.* (citation omitted).   Plaintiff's claim does not include the required element of unlawfulness.   Instead, Plaintiff's specific claim is that:  (1) the Defendants intended to restrict his freedom of movement; (2) his freedom of movement was restricted for a period of time by Defendants; and (3) he was aware that his freedom

23

of movement was restricted.[15]  *Proposed Amended Complaint* [#78-1] at 11.

Furthermore, putting aside this clear pleading deficiency, Plaintiff's confinement prior to his deportation has already been litigated and found not to have been unlawful.  *See Vaupel v. Ortiz*, 05-cv-00327-WDM-MJW [Docket No. 50], *dismissed for lack of jurisdiction on appeal*, 244 Fed. Appx. 892 (10th Cir. Aug. 9, 2007) (unpublished decisions).[16] Specifically, a Court in this District has already determined that "Vaupel's detention pending removal [was] not unlawful."  *Id.* (citing 8 U.S.C. § 1231(a)(6)).  Because the Court's ruling in that case referred to the same detention as in this case, *res judicata* arguably bars Plaintiff from relitigating the issue.  *See King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir. 1997) (citation omitted) (explaining that "[r]es judicata, or claim preclusion, precludes a party . . . from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits").  Finally, this claim arguably falls within the due care exception under the FTCA.  *See* 28 U.S.C. § 2680(a) (noting that FTCA liability will not lie for actions taken in the exercise of due care based on the authority of a statute or regulation).  Therefore, even if Plaintiff had properly

---

[15] In the statement of facts section of the proposed Amended Complaint, Plaintiff also asserts that he "spent 314 days at the Adams County Jail, on false charges that *may* have been fabricated by Ortiz and ICE."  *Proposed Amended Complaint* [#78-1] at 9 (emphasis added)  A complaint "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*, 129 S. Ct. at 1949.  Thus, a complaint does not "suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'"  *Id.*  Here, because Plaintiff's assertion does not have any factual support, the Court does not accept it as a valid assertion of unlawful detention of Plaintiff.  In any event, the conduct of Ortiz cannot be the basis for Plaintiff's false imprisonment claim.

[16] The Court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."  *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *see also Gulf Coast W. Oil Co. v. Trapp*, 165 F.2d 343, 349 (10th Cir. 1947) (permitting Court on a motion to dismiss to use uncontroverted facts ascertainable in another matter which are relevant to an issue in the pending case to "reach a just result and bring an end to litigation").

pled unlawfulness, such a claim would likely be precluded such that it would not survive a motion to dismiss.[17]  Accordingly, the Court finds that Plaintiff's false imprisonment claim as it relates to Sampson's or any other officer's conduct is futile and that Plaintiff's Motion to Amend should be denied as it relates to this claim.

### ii.    Plaintiff's Negligence Claim

The Court finds that Plaintiff's negligence claim is futile because Plaintiff failed to exhaust his administrative remedies before bringing this claim and, therefore, the Court lacks subject-matter jurisdiction over the claim.   Even if Plaintiff did exhaust his administrative remedies, the Court finds that Plaintiff has failed to state a negligence claim upon which relief can be granted because Plaintiff's negligence claim is a mere recitation of the elements without adequate factual support.

"As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."  *See Duplan*, 188 F.3d at 1199 (citing 28 U.S.C. 2675(a)).   An administrative tort claim must "(1) sufficiently describ[e] the injury to enable the agency to begin its own investigation, and (2) [include] a sum certain damages claim."  *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citation omitted).   A claim's failure to contain the prerequisite information renders it ineffective.  *Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir.

---

[17] To the extent that Plaintiff argues in his Reply that the prior judgment in Case No. 05-cv-00327-WDM-MJW should be set aside pursuant to Fed. R. Civ. P. 60(b), see *Reply* [#84] at 9, Plaintiff has failed to direct the Court to any authority for applying Rule 60(b) in this case to set aside a judgment in another case (as opposed to proceeding in the underlying case).  Nor has Plaintiff alleged that he has sought and obtained a new judgment in the underlying case.  In any event, ignorance of the rules or law, as would appear to be Plaintiff's argument to set aside the earlier judgment, has been found to be insufficient grounds for obtaining a new judgment.  *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2858, at 280-81 (2d ed. 1995).

1989).   Additionally, to properly exhaust an FTCA claim, "notice of the facts and circumstances underlying a claim" must be provided.  *Estate of Trentadue*, 397 F.3d at 852-53.

Here, Plaintiff filed a grievance with DHS on October 10, 2006 [Docket No. 3].  In that grievance, Plaintiff alleged that Officer Michael Williams was negligent about informing Plaintiff of his options under the Visa Waiver Program and that USCIS District Director Anne Estrada negligently failed to extend Plaintiff's humanitarian parole.  *Id.* at 62-63.  The proposed Amended Complaint, to the extent that it pleads sufficient allegations to support a negligence claim, does not allege that Defendants negligently failed to extend Plaintiff's humanitarian parole or that Defendants failed to inform Plaintiff of his options under the Visa Waiver Program.   Instead, the proposed Amended Complaint raises a general negligence claim that goes beyond what Plaintiff attempted to grieve in his FTCA grievance.  *Compare Proposed Amended Complaint* [#78-1] at 11, *with Complaint* [#3] at 55-74.

Because exhaustion of an FTCA claim is jurisdictional, Plaintiff bears the burden of proving that he adequately exhausted his claim by either attaching the supporting documentation to his Complaint or identifying with specificity the procedural history of his attempts to exhaust the outcome.  *See, e.g.*, *Celli*, 40 F.3d at 327; *Three-M Enters.*, 548 F.2d at 294-95.  Plaintiff has not done so here.  Therefore, to the extent that the parameters of Plaintiff's negligence claim are sufficiently clear, it does not appear that Plaintiff exhausted the substance of the negligence claim that he attempts to pursue, and accordingly the Court arguably lacks subject-matter jurisdiction over the claim.  *See Widjaja v. Nicholson*, 08-cv-00204-MSK-MEH, 2009 WL 321875, at *2 (D. Colo. Feb. 9, 2009)

(unpublished decision) ("[T]he Court lacks subject matter jurisdiction over [claims when a] Plaintiff has failed to exhaust his administrative remedies under the Federal Tort Claims Act, 28 U.S.C. § 2675(a).").

Even if Plaintiff sufficiently exhausted his administrative remedies with respect to his negligence claim, he has failed to state a negligence claim upon which relief can be granted.  "To establish a claim based on negligence, the plaintiff must show:  (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff."  *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005).  No factual allegations in the proposed Amended Complaint speak to whether Defendants owed Plaintiff a legal duty, or how they allegedly breached such a legal duty.  The negligence claim, which merely contains a list of elements for a negligence cause of action, is insufficient as pled.  *See Ashcroft*, 129 S. Ct. at 1949. Accordingly, the Court finds that Plaintiff's negligence claim is futile and that Plaintiff's Motion to Amend should be denied as it relates to this claim.

### iii.    Plaintiff's IIED, Civil Conspiracy, and Breach of Fiduciary Duty Claims

Plaintiff's IIED, civil conspiracy, and fiduciary duty claims are futile because they fail to state claims upon which relief could be granted and therefore would be subject to dismissal pursuant to a Rule 12(b)(6).  As noted earlier, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft*, 129 S. Ct. at 1949.  Because Plaintiff's IIED, civil conspiracy, and breach of fiduciary duty claims are mere recitations of the elements without further factual

support, the Court finds that these claims are futile and that Plaintiff's Motion to Amend should be denied as it relates to each of these claims.

First, while IIED claims may be brought pursuant to the FTCA, a complaint must provide sufficient allegations to support such a claim. *See Estate of Trentadue*, 397 F.3d at 855-56. Specifically, "Colorado has adopted the Restatement (Second) of Torts definition of intentional infliction of emotional distress: 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 963 (Colo. Ct. App. 2009) (citing *Restatement (Second) of Torts* § 46(1) (1965)). Thus "[t]he elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress." *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. Ct. App. 2003).

While Plaintiff recites these elements in his IIED claim, he fails to provide factual support for his allegation that Defendants' actions were extreme and outrageous. Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Estate of Trentadue*, 397 F.3d at 855. Plaintiff has not satisfactorily alleged that Defendants violated any laws or acted unreasonably given the circumstances. As Defendants note, "the action that Plaintiff apparently alleges caused him distress were the result of the United States exercising its rights to detain an alien prior to removing him." *See Response* [#83] at 23.

As has already been noted, Plaintiff's detention pending removal was found to be lawful. *Vaupel*, No. 05-cv-00327-WDM-KLM [Docket No. 50]. "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Restatement (Second) of Torts* § 46 cmt. G. Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 557). Here, I find that the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* Therefore, I agree that the allegations do not sufficiently allege the type of conduct that plausibly qualifies as extreme and outrageous. Thus Plaintiff fails to state an IIED claim upon which relief can be granted such that Plaintiff's Motion to Amend should be denied as it relates to this claim.

Second, "[t]o establish a civil conspiracy, a plaintiff must show by a preponderance of the evidence that there exists: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result." *Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 674-75 (Colo. Ct. App. 1999).

Courts should deny a plaintiff leave to amend a civil conspiracy claim if the amended complaint "alleges nothing to plausibly suggest [that] defendants agreed on an object of the putative conspiracy [and] instead . . . [only] generally avers that defendants 'agreed, by words or conduct, to accomplish an unlawful goal or accomplish a goal through unlawful

29

means'" through a mere "formulaic recitation" of such.  *Mecca v. United States*, 389 Fed. Appx. 775, 780 (10th Cir. July 26, 2010) (unpublished decision) (citing *Twombly*, 550 U.S. at 555).  Here, Plaintiff generally avers that "Defendants and third parties agreed, by words or conduct, to accomplish an unlawful goal through unlawful means."  *Proposed Amended Complaint* [#78-1] at 12.  However, Plaintiff fails to allege any factual support for his contention that Defendants or third parties acted in concert with each other.  In fact, even when read liberally, the proposed Amended Complaint discusses each Defendant's or third party's conduct in isolation and does not provide any factual allegation that would permit the Court to infer that such conduct occurred by agreement between them.  *See Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) (noting that "[t]he court will not infer the agreement necessary to form a conspiracy; evidence of such a conspiracy must be presented by the plaintiff").  Because Plaintiff failed to provide any plausible factual support for his claim, the Court finds that this claim is futile.

Additionally, Plaintiff fails to show that he can pursue a civil conspiracy claim pursuant to the FTCA.  As previously noted, the United States is the only proper Defendant in relation to FTCA claims.  To that end, "[u]nder § 1346(b)'s general waiver of immunity, the United States is treated as a singular individual."  *Bowling v. United States*, 740 F. Supp. 2d 1240, 1250 (D. Kan. 2010) (discussing civil conspiracy as it relates to Kansas law, which contains a requirement similar to Colorado law that two or more persons be involved).  Therefore, because the United States is a single person, it cannot accomplish "an agreement by two or more persons."  *Id.* (explaining that "[t]he very nature of civil conspiracy requires a meeting of the minds between 'two or more persons' to perform an underlying tort").  Stated another way, because the United States is treated as an

individual, under the applicable law, "it is impossible for such an 'individual' to engage in a civil conspiracy with itself." *Id.* (holding that because United States cannot conspire with itself, it has not waived sovereign immunity with respect to conspiracy claims under the FTCA); *accord Cox v. United States*, 881 F.2d 893, 895 (10th Cir. 1989) ("If a private person would be shielded from liability under the statute, the United States must also be shielded."). Accordingly, for either reason stated above, the Court finds that Plaintiff's civil conspiracy claim is futile and that Plaintiff's Motion to Amend should be denied as it relates to this claim.

Finally, "[i]In order to recover on a claim for breach of fiduciary duty, a plaintiff must prove: (1) that the defendant was acting as a fiduciary of the plaintiff; (2) that he breached a fiduciary duty to the plaintiff; (3) that the plaintiff incurred damages; and (4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages." *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. Ct. App. 1993). While Plaintiff recites these elements in his breach of fiduciary duty claim, his allegations fail to go beyond a mere recitation of such elements, including that he fails to provide factual support for each element. For example, Plaintiff does not provide any facts which tend to show that Defendants had a fiduciary duty to Plaintiff or that they breached such duty. As noted by Defendants, "CIS and ICE officials enforce the nation's immigration laws and do not act as Plaintiff's fiduciaries." *Response* [#83] at 21. Thus Plaintiff fails to state a breach of fiduciary duty claim upon which relief can be granted such that Plaintiff's Motion to Amend should be denied as it relates to this claim.

### III. Conclusion

As noted above, the proposed Amended Complaint is deficient in its present form.

Several claims are subject to dismissal on jurisdictional grounds (negligence, fraud, interference with contract, civil conspiracy, abuse of process (Ortiz) and false imprisonment (Ortiz)), while the remaining claims are improperly pled. Even if the pleading failures could be corrected, there are more compelling bases for denying the Motion to Amend. For example, the abuse of process claim based on Sampson's conduct may not proceed absent a factual basis for asserting that he had an ulterior purpose. The same is true for the breach of fiduciary duty claim in the absence of a factual basis for asserting that the Defendants owed Plaintiff a legal duty. Likewise, the false imprisonment claim is arguably barred by *res judicata* and/or the due care exception pursuant to 28 U.S.C. § 2680(a). Moreover, to the extent that Plaintiff's IIED claim is premised on the alleged distress he suffered from his February 2007 deportation, his October 2006 FTCA grievance cannot be said to have exhausted that claim. Finally, any potential *Bivens* claims against the individual Defendants would likely be barred by the applicable statute of limitations.

Although Fed. R. Civ. P. 15(c)(2) permits adding United States officials by amendment pursuant to the relation back doctrine, it has been found not to apply to *Bivens* claims where the claims (which did not previously exist in the prior complaint) are asserted against officials in their individual capacities and such officials were not served within the statute of limitations. *See Trujillo v. Simer*, 934 F. Supp. 1217, 1226 (D. Colo. 1996) *see also Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996) (refusing to correlate knowledge of suit on individual defendants not served within statute of limitations by service of lawsuit on their employer involving different claims). Moreover, as Plaintiff knew the identities of Ortiz and Sampson in 2007 when he filed his Complaint asserting FTCA claims, he cannot claim that Fed. R. Civ. P. 15(c)(1) permits amendment after expiration

of the statute of limitations. *See Pulse v. Larry H. Miller Group*, No. 03-cv-02073-WDM-PAC, 2005 WL 1563222, at *12 (D. Colo. June 20, 2005) (unpublished decision) (citation omitted) (recognizing that amendment by adding defendants permitted only where a mistake of identity has been made and noting that where plaintiff knows the existence of defendants and their roles, but does not timely sue them, he cannot claim that the failure was the result of mistaken identity).  Because the last wrong alleged by Plaintiff occurred when Plaintiff was deported in February 2007, he had two years from that date (at the latest) to pursue *Bivens* claims.  *Trujillo*, 934 F. Supp. at 1226 (citing Colo. Rev. Stat. § 13-80-102).  He failed to do so and that failure cannot be remedied now.

### IV.  Recommendation

For the reasons given above, the Court respectfully **RECOMMENDS** that Plaintiff's Motion to Amend [#78] be **DENIED**.

Given Judge Krieger's prior Order that the case should be closed if not properly amended, and the current futility of the proposed Amended Complaint, the Court additionally **RECOMMENDS** that Plaintiff's case be **DISMISSED**.  Although the Court finds that the present Motion to Amend is not subject to denial on the grounds of undue delay or prejudice, any future attempts to amend could not be viewed as charitably.  *See* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1488, at 659 (2d ed. 1990) (noting that delayed amendment is "contrary to the spirit of the rule and [justifies] the court denying permission because of the passage of time");  6 *id.* § 1488, at 670 ("As a general rule, the risk of substantial prejudice increases with the passage of time.").

Moreover, the time has come for this matter to be resolved as originally

contemplated by Judge Krieger.  Plaintiff acknowledges that he cannot proceed based on the allegations contained in his original Complaint, see *Motion to Amend* [#78] at 5 (recognizing that Plaintiff's "initial pleadings are deficient"), and the Court holds here that he cannot proceed based on the allegations contained in his proposed Amended Complaint.  The ineffectiveness of the proposed Amended Complaint and the length of time that this case has been pending now counsel in favor of closing the case.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  May 12, 2011

BY THE COURT:

 s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix